### BUSH et v CLEAVER et

Ohio Appeals, 2nd Dist, Fayette Co

No. 241. Decided February 2, 1939

### ROGERS v PEOPLE'S BLDG & SAV CO

Ohio Appeals, 2nd Dist, Greene Co

No 443. Decided February 2, 1939

Ed L. Bush, Washington C. H. O., for executor.

Charles F. Points, Jr., Xenia, O., for administrator.

Thomas J. Herbert, Atty. Gen., Columbus, Virgil P. Cline, Columbus, of counsel.

## OPINION

By BARNES, PJ.

The above-entitled causes are now being determined in this court as error proceedings by reason of appeals on questions of law from the judgments of probate courts in Fayette County and Greene County.

In No. 241, Fayette County, the State of Ohio, Division of Aid for the Aged, Department of Public Welfare is the appellant.

In case No. 443, Greene County, the plaintiff, William S. Rogers, adminis-trator of the estate of Sallie A. Perry-Harris, deceased, is the appellant. The questions for determination are the same in the two cases with an additional question in case No. 241, Fayette County, not presented in case No. 443, Greene County. The decedents in both cases prior to their death had received aid from the State of Ohio, Department of Public Welfare, Division of Aid for the Aged. In the Fayette County case the decedent, George C. Gooderl, had received as old age pension the sum of $910; in the Green County case the decedent, Sallie A. Perry-Harris, had received as old age pension the sum of $751.40.

In the Fayette County case the total assets of the decedent amounted to $1101.13 in figures itemized as follows:

| | |
|---|---:|
| Cash | $ 32.00 |
| Balance in the Washington Savings Bank | 875.88 |
| Balance of the face of certificate of participation in the liquidating trust of the Washington Savings Bank | 193.25 |
| **Total** | **$1101.13** |

It is inferable that the certificate of participation in the Savings Bank may be of lesser value than the face. The allowed claims against the estate are as follows:

| | |
|---|---:|
| Cleaver Funeral Home, Washington C. H., Ohio, for funeral | $ 544.20 |
| Ella Carr, account for care, board and room in last sickness | 35.00 |
| Francis A. Malloy, account for nursing in last sickness | 18.50 |
| The Division of Aid for the Aged account for aid paid to the deceased | 910.00 |
| **Total** | **$1507.70** |

In the Greene County case the assets of the decedent, Sallie A. Perry-Harris, consisted of an equity in real estate of the appraised value of $750.00. The

amount of the claims filed and allowed other than the claim of the Department of Welfare for old age pension in the sum of $751.40 are not listed. In the light of the manner in which the questions are raised the failure to itemize and list other claims is not important.

In each case the executor filed a petition asking the court for declaratory judgment as to the order in which claims should be paid.

It is the contention of each administrator that §10509-121 GC, is controlling and that by reason thereof claims coming under the classification of 1, 2, 3, 4, and 5 should be paid before the preferred claim of the State.

It is the contention of the State represented by the Attorney General that §1359-7 GC creates an exception to the order of payment prescribed under §10509-121 GC, and under its language gives a preference over all of the claims. The State does not make the claim that §1359-7 GC repeals any part of §10509-121 GC, but rather that the enactment creates an exception to the general rule.

The issue being controlled by the two sections above referred to, we now set them out in full. §10509-121 GC as effective September 2, 1935, reads as follows.

"Section 10509-121. **Order in which debts to be paid.** Every executor or administrator shall proceed with diligence to pay the debts of the deceased, applying the assets in the following order:

1. Bill of funeral director not exceeding three hundred and fifty dollars, such other funeral expenses as are approved by the court, the expenses of the last sickness and those of administration.

2. The allowance made to the widow and children for their support for twelve months.

3. Debts entitled to a preference under the laws of the United States.

4. Public rates and personal property taxes. Any devisee taking any real estate under a devise in any will or an heir taking under the statutes of descent, shall take the same subject to all taxes, penalties and assessments, which are a lien against such real estate.

5. To every person who performed manual labor in the service of the deceased, before payment of the general creditors, the full amount of wages due to such person for such labor performed within twelve months preceding the decedent's death, not exceeding one hundred and fifty dollars.

6. Other debts as to which claims have been presented within four months after the appointment of the executor or administrator.

7. Debts due to all other persons. Such part of the bill of the funeral director as exceeds three hundred and fifty dollars shall be included as a debt under Items 6 or 7 depending upon the time when the claim for such additional amount is presented."

Section 1359-7 reads as follows:

"Section 1359-7. Upon the death of a person the total amount of aid paid to said person and, or to his or her spouse under the act, shall be a preferred claim against the estate of such deceased person."

Other cogent sections of the old age pension act can advantageously be read as an aid to the subject under consideration in the above subsection 7. On March 18, 1938, the office of the Attorney General of Ohio in answer to a communication from the Prosecuting Attorney of Mercer County released an opinion construing §1359-7, GC and its effect on §10509-121, GC. The seven-page opinion contained the following syllabus:

"Pursuant to §1359-7, GC, a claim of the Division of Aid for the Aged in the Department of Public Welfare of the State of Ohio for old age assistance given the deceased recipient thereof is a preferred claim against the estate of deceased recipient. Such preferred

claim is prior to all claims specifically set forth in §10509-121 GC."

Aside from the opinion of the Attorney General no decision of this or any other State directly in point are cited nor through an independent search have we been able to find any reported case.

Reviewing the legislation as to old age pensions we find that under the early enactment applicants in order to qualify were required to convey all their real estate to the State in trust, with provision that upon the death of the recipient of such aid the property should be sold and after payment of costs of sale, taxes, etc., and the State repaid for money advanced in furtherance of such aid the balance if any to be returned to the estate for distribution according to law.

It was found in practice that many deserving eligible old age people were reluctant to deed away their property and then followed an amendment to the act whereby the conveyance in trust was optional, but reserving to the State after the death of the recipient of such aid a claim against the estate. Under this language the claim was general and on a parity with all other general unsecured claims.

The act was then amended so as to include subdivision 7, making amount of aid paid a preferred claim upon death of recipient. We are unable to follow the argument of ▮▮▮▮▮▮▮▮ counsel for the State that the words "Preferred Claim" should be given a construction making claims arising through payments to the aged a preference over every other obligation existing against the estate. Under the language of subdivision 7 above quoted the monthly payments made do not constitute a claim at all until after the death of the recipient; upon such death the total payments become a preferred claim. There are many preferred claims existing against every estate and in all instances the order of priority is prescribed by legislative enactment. In the absence of a specific provision we can not bring ourselves to the conclusion that the words "preferred claim" take any higher standing than a preference over general claims.

Mortgage claims, mechanics' lien claims, judgment claims, chattel mortgage claims, taxes and assessments or other liens are preferred claims and the order of their payment is specifically prescribed by various sections of the Code.

We now set forth specific enactments as illustrative of the above statement. **Section 10509-123** reads as follows:

"Nothing in the next two preceding sections shall affect any lien, legal or equitable, which a creditor or other person had upon the personal estate of the deceased during his lifetime."

The section just quoted directly affects the general provision of §10509-121 prescribing in general the order in which debts are to be paid and also §10509-122 as to the manner of payment. The quoted section can not be construed to include the State's claim in the instant case for the reason that the section specifically limits the exception to liens, legal or equitable, held during the lifetime of the decedent.

**Section 10510-46** provides for the distribution of money received from sale of real estate by fiduciary. First in order, is payment of costs and expenses of sale including reasonable attorney fees to be fixed by the court, fiduciary's services in connection with the sale. Second, is the payment of taxes, penalties and assessments; payment of mortgages and judgments as far as they operate as a lien.

Third, in the case of sale by an executor or administrator, the remaining proceeds of sale shall be applied as follows: (a) if the action be to sell real estate to pay legacies so much of the money as necessary will be applied to the discharge of such legacies; (b) to discharge the claims and debts of the estate in the order provided by law. We can see many infirmities in this last

section referred to but none that affect the issues in the instant case.

Some of the infirmities of the section are cured by §10510-21, wherein it is provided that upon sale of real estate by fiduciary the court may determine the equities among the parties and the priorities of liens of the several lienholders on such real estate and order a distribution of the money arising from the sale in accordance therewith. If the claimed construction by the Attorney General of Subdivision 7 is followed it would have the effect of creating a priority over mortgage liens, judgment liens, mechanics' liens, tax liens, as well as all other claims the order of payment of which is prescribed in §10509-121. Such a construction would place the State in a more favorable position than that provided in the early legislation where applicants for aid were required to convey their real estate in trust. This earlier enactment provided that after the death of the recipient of aid the property should be sold and from the proceeds of sale first pay the costs of sale and second, taxes and assessments. In the instant case it is the contention of the State that not even costs of administration would have priority over the State's claim. It is inconceivable that the Legislature had any such intent.

The words "preferred claim", unless something in the context to the contrary, should be given its ordinary and usual meaning. The common acceptation of the claim is a claim that is preferred over general claims. The words standing alone may never be given a construction through which the preferred claim would take preference over secured claims or other claims declared to have a preference. The section providing order of payment in effect creates preferences and under this section the order of preference is provided. The State's claim in the instant case is not provided for except that we adopt the principle of law that preferred claims are ahead of general claims and hence should be paid before claims falling under paragraphs 6 and 7 of §10509-121.

We can see many good reasons why "preferred claims" as in the instant cases might properly have a higher rating. This is a matter for the Legislature and not the courts. We might also say that we doubt very much if any legislature would desire to place these preferred claims ahead of all others.

The judgment of the Probate Court of Greene County, No. 443, will be reversed and cause remanded for further proceedings according to law.

A further question is presented in the Fayette County case. It involves a construction of subdivision 1 of §10509-121, GC., which reads as follows:

"Bill of funeral director not exceeding $350.00, such other funeral expenses as are approved by the court, expenses of the last sickness and those of administration."

It is also necessary to consider Subdivison 7 which reads as follows:

"Debts due to all other persons. Such part of the bill of the funeral director as exceeds $350.00 shall be included as a debt under item 6 or 7 depending upon the time when the claim for additional amount is presented."

The bill of the funeral director not exceeding $350.00 would not require any allowance by the Probate Court. Over and above $350.00 the section requires an approval of the court. Subdivision 7 expressly provides that so much of the bill of the funeral director as exceeds $350.00 shall be included as a debt under Item 6 or 7, etc. We think the language of the two subdivisions of the section is clear and that the Probate Court would have no power to allow $50.00 over the maximum of of $350.00 so as to make the $50.00 payable under Subdivision 1.

In this particular the judgment of the Probate Court of Fayette County will be modified and otherwise affirmed.

The cause will be remanded for further proceedings according to law.

HORNBECK and GEIGER, JJ, concur.